UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT
_____

JEFF LUKASAK,

        Plaintiff,

    v.

PREMIER SPORTS EVENTS LLC, a Delaware
limited liability company, LEGACY GLOBAL
SPORTS LP, a Delaware limited partnership,
and STEPHEN GRIFFIN, an individual,

        Defendants.

Case No. 19-450

Hon. Paul L. Maloney

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
251 North Rose Street
Suite 200, PMB № 288
Kalamazoo, MI 49007-3860
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

John David Gardiner (P72641)
Stephen J. Staple (P77692)
BODMAN PLC
99 Monroe Ave NW, Ste. 506
Grand Rapids, MI 49503-2639
(tel.) 616.205.1864

*Attorneys for Plaintiff*

Brandon J. Wilson (P73042)
HOWARD & HOWARD ATTORNEYS PLLC
450 W. Fourth St.
Royal Oak, MI 48067
(tel.) 248.645.1483
bjw@h2law.com

Barry S. Pollack
Phillip Rakhunov
Ashly E. Scheufele
POLLACK SOLOMON DUFFY LLP
(*application for admission pro hac vice forthcoming*)
101 Huntington Ave., Ste. 530
Boston MA 02199
(tel.) 617.439.9800

*Attorneys for Defendants*

---

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................................ii-v

I. BACKGROUND...............................................................................................................1

    A. The Buyout for Lukasak's Company...........................................................................1

    B. Lukasak's Employment, Bonus, and Class C Unit Agreements....................................2

    C Defendants Terminate Lukasak's Employment Without Cause
      and Targeted Him Because of His Gender...................................................................2

II. ARGUMENT....................................................................................................................3

    A. The Parties to This Case Have Not Agreed to a Forum-Selection Clause
      That Applies to Any of Their Agreements In Dispute Here............................................3

        1. The Purchase Agreement Applies to Premier Sports Events Inc.—the
          Party That Made That Agreement—and It Does Not Apply To Luksasak
          Personally.......................................................................................................5

        2. Lukasak's Employment and Bonus Incentive Agreements Were Separate
          Contracts and Were Not Incorporated Into the Purchase Agreement.....................7

        3. The Parol Evidence Rule Bars the Introduction of Any Additional Terms
          To Change the Employment or Bonus Incentive Agreements..............................9

        4. Defendants Interpretation of the Purchase Agreement's Forum-Selection
          Clause Is Unreasonable and Renders Other Provisions Extraneous......................12

    B. Defendants Have Given the Court No Reason to Transfer This Case To
      Maine Under Section 1404(a) or Otherwise...............................................................14

    C. The Claims Under the Bonus Incentive Agreement Are Ripe for Review....................16

    D. Lukasak Adequately Pleaded His Tortious Interference Claims Against
      Defendant Griffin.....................................................................................................17

        1. Michigan law applies to Lukasak's tortious interference claim...............................17

        2. Defendant Griffin's employee status does not immunize him from
          liability when he used his position to further his own interests at
          Lukasak's expense...........................................................................................19

    E. Lukasak Adequately Pleaded His Gender Discrimination Claim..................................21

    F. The Court Should Disregard the Materials Outside the Pleadings that
      Defendants Offered in Support of Their Motion To Dismiss.........................................24

III. CONCLUSION................................................................................................................25

## INDEX OF AUTHORITIES

**Cases**

*AGA Gas Inc. v. Wohlert Corp.*,
  No. 98-155, 2000 WL 1478466 (W.D. Mich. July 21, 2000) .......................................... 19

*Albemarle v. AstraZeneca UK Ltd.*,
  628 F.3d 643 (4th Cir. 2010) ............................................................................................. 4

*Associação Brasileira de Medicina de Grupo v. Stryker Corp.*,
  891 F.3d 615 (6th Cir. 2018) ........................................................................................... 15

*Babbitt v. United Farm Workers Nat't Union*,
  442 U.S. 289 (1979) ......................................................................................................... 17

*Barrett v. McDonald Inv. Inc.*,
  870 A.2d 146 (Me. 2005) ................................................................................................. 12

*Bowlby v. Carter Mfg. Corp.*,
  138 F. Supp. 2d 182 (D. Mass. 2001) ....................................................................... 10, 14

*Bradley v. Kryvicky*,
  574 F. Supp. 2d 210 (D. Me. 2008) ................................................................................ 10

*Canadian Nat'l Ry. Co. v. Montreal, Maine & Atl. Ry. Inc.*,
  786 F. Supp. 2d 398 (D. Me. 2011) ................................................................................ 13

*Chappell v. GTE Prod. Corp.*,
  803 F.2d 261 (6th Cir. 1986) ........................................................................................... 23

*Choice Sec. Sys., Inc. v. AT&T Corp.*,
  141 F.3d 1149 (1st Cir. 1998) ......................................................................................... 10

*Cofman v. Acton Corp.*,
  958 F.2d 494 (1st Cir. 1992) .............................................................................................. 9

*Cole v. Mileti*,
  133 F.3d 433 (6th Cir. 1998) ........................................................................................... 17

*Combined Energies v. CCI Inc.*,
  514 F.3d 168 (1st Cir. 2008)) ............................................................................................ 7

*Crellin Tech. Inc. v. Equipmentlease Corp.*,
  18 F.3d 1 (1st Cir. 1994) .................................................................................................. 18

*Farrell v. Ford Motor Co.*,
  501 N.W.2d 567 (Mich App. 1993) ................................................................................ 18

*Flaherty v. Muther,*
  17 A.3d 640 (Me. 2011)...........................................................................................6

*Forum Fin. Group v. Harvard Coll.,*
  173 F. Supp. 2d 72 (D. Me. 2001)..........................................................................18

*Gann v. Kolfage,* No. 14-1609,
  2016 WL 6127722 (M.D. Tenn. Sept. 30, 2016).....................................................23

*Guardian Angel Credit Union v. MetaBank,*
  No. 08-261, 2010 WL 1794713 (D. N.H. May 5, 2010)...........................................18

*Guerini Stone Co. v. P.J. Carlin Constr. Co.,*
  240 U.S. 264 (1916).................................................................................................7

*Grand Pointe Prop. LLC v. SEC Grand Pointe LLC,*
  No. 301293, 2013 WL 195527 (Mich. Ct. App. Jan. 17, 2013)...................................9

*Hall v. Gen. Motors Corp.,*
  582 N.W.2d 866 (Mich. App. 1998)

*Handy Boat Serv. Inc. v. Prof'l Servs. Inc.,*
  711 A.2d 1306 (Me. 1998)..................................................................................9, 10

*Hazle v. Ford Motor Co.,*
  628 N.W.2d 515 (Mich. 2001)................................................................................21

*Johnston Assocs. Inc. v. Rohm & Haas Co.,*
  560 F. Supp. 916 (D. Del. 1983).............................................................................18

*Konica Minolta Bus. Solutions USA Inc. v. Lowery Corp.,*
  No. 15-11254, 2016 WL 6828472 (E.D. Mich. Nov. 18, 2016) ................................19

*In re Delta Am. Re Ins. Co.,*
  900 F.2d 890 (6th Cir. 1990)....................................................................................5

*Lakeland Reg'l Health Sys. v. Walgreens Health Initiatives Inc.,*
  604 F. Supp. 2d 983 (W.D. Mich. 2009) ................................................................19

*Lanier v. Syncreon Holdings Ltd.,*
  No. 11-14780, 2012 WL 3475680 (E.D. Mich. Aug. 14, 2012) ..................................4

*Lewis v. City of Detroit,*
  702 F. App'x 274 (6th Cir. 2017) ...........................................................................22

*Live Cryo LLC v. CryoUSA Import & Sales LLC,*
  No. 17-11888, 2017 WL 4098853 (E.D. Mich. Sept. 15, 2017) ...............................19

*Loucks v. Fieldstone Mortg. Co.*,
   No. 07-492, 2007 WL 2814866 (W.D. Mich. Sept. 25, 2007)....................................14

*Lytle v. Malady*,
   579 N.W.2d 906 (Mich. 1998) ...................................................................................21

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014)..........................................................................................4

*Michael v. Liberty*,
   547 F. Supp. 2d 43 (D. Me. 2008) ................................................................................6

*Miller v. CVS Pharmacy Inc.*,
   779 F. Supp. 2d 683 (E.D. Mich. 2011)......................................................................22

*Moellers N. Am., Inc. v. MSK Covertech Inc.*,
   912 F. Supp. 269 (W.D. Mich. 1995) .........................................................................19

*Northrop Grumman Info. Tech. Inc. v. United States*,
   535 F.3d 1339 (Fed. Cir. 2008).....................................................................................8

*Ondricko v. MGM Grand Detroit LLC*,
   689 F.3d 642 (6th Cir. 2012)........................................................................................22

*Poisson v. Travelers Ins. Co.*,
   31 A.2d 233 (Me. 1943).................................................................................................6

*Roof v. Bel Brands USA Inc.*,
   641 F. App'x 492 (6th Cir. 2016) ................................................................................22

*Segue v. Wayne County*,
   No. 310282, 2014 WL 2154976 (Mich. Ct. App. May 22, 2014)................................20

*Seven D. Enter. Ltd. v. Fonzi*,
   438 F. Supp. 161 (E.D. Mich. 1977)......................................................................19, 20

*Scott v. Fall Line Condo. Ass'n*,
   206 A.3d 307 (Me. 2019) .............................................................................................13

*Stack v. Marcum*,
   382 N.W.2d 743 (Mich. Ct. App. 1985)......................................................................19

*Steelcase Inc. v. Smart Techs. Inc.*,
   336 F. Supp. 2d 714 (W.D. Mich. 2004)...........................................................14, 15, 16

*Sutherland v. Kennington Truck Serv. Ltd.*,
   562 N.W. 2d 466 (Mich. 1997)....................................................................................18

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002).................................................................................22

*Top Line Distrib. Inc. v. Spickler*,
    525 A.2d 1039 (Me. 1987)..........................................................................6

*Town v. Michigan Bell Telephone*,
    568 N.W.2d 64 (Mich. 1997)......................................................................21

*United Steelworkers v. Cyclops Corp.*,
    860 F.2d 189 (6th Cir. 1988)......................................................................16

*Vigilant Ins. Co. v. Burnell*,
    871 F. Supp. 51 (D. Me. 1994)....................................................................13

*Wendy's Int'l Inc. v. Saverin*,
    337 F. App'x 471 (6th Cir. 2009).................................................................10

*White v. Fleet Bank of Maine*,
    875 A.2d 680 (Me. 2005)............................................................................7

*Wright v. AutoZone Stores Inc.*,
    951 F. Supp. 2d 973 (W.D. Mich. 2013)......................................................24

## Statutes, Court Rules, and Other Authorities

28 U.S.C. § 1404(a).....................................................................................14, 15

Fed. R. Civ. P. 8...........................................................................................1, 22

Fed. R. Civ. P. 12(b)(6)......................................................................17, 19, 20, 24

Fed. R. Civ. P. 15(a)(2)..................................................................................25

Mich. Model Civ. JI 125.01............................................................................20

Mich. Model Civ. JI 105.04(b).........................................................................21

The Court should deny Defendants' motion to dismiss because:

(1)    Plaintiff Jeff Lukasak never personally agreed to the purchase agreement that contains the forum-selection clause. Only his company did. The agreements at issue in this case are separate, stand alone agreements with full integration clauses, which means the parol evidence rule bars the introduction of any additional terms (like the forum-selection clause).

(2)    Lukasak's claim for his bonus will come due on September 17, before Defendants' due date to file their reply brief, and Defendants have no intention of paying the bonus. This claim is ripe for review.

(3)    Defendant Stephen Griffin interfered with Lukasak's contracts for his own personal gain and at Lukasak's expense. He can face liability for tortious interference, even as the CEO of the company who made the contract.

(4)    An employment discrimination complaint does not have to plead a *prima facie* case and the Elliott-Larsen Civil Rights Act (ELCRA) only requires proof that Lukasak's gender motivated or made a difference in the decision to terminate his employment. The complaint more than suffices to provide notice of that claim and Federal Rule of Civil Procedure 8 requires nothing more.

The Court should therefore deny Defendants' motion in its entirety.

## I. BACKGROUND

### A.    The Buyout for Lukasak's Company

Plaintiff Jeff Lukasak started the business central to the dispute in this case, Premier Sports Events. (Pl.'s First Am. Compl. ¶ 21, PageID.34) Under Lukasak's vision and leadership, the business became enormously profitable and successful to the point where it employed over 40 employees in Kalamazoo. (*Id.* ¶ 21, PageID.35)

By 2014, private equity groups and investors began to take notice of the business Lukasak had built and he ultimately structured a buyout deal. (*Id.* ¶ 23, PageID.35) Under the terms of Lukasak's buyout deal, a new entity had been formed to operate the business after the buyout, which was called Premier Sports Events LLC, one of the defendants in this case. (*Id.*)

- 1 -

The parties who entered into the purchase and sale agreement for the buyout were: (1) LGS Logistics LLC, (2) Selects Sports Management Inc., (3) Premier Sports Events Inc., and (4) Premier Sports Events LLC. (Purchase & Sale Agreement, Preamble, PageID.108)  Jeff Lukasak did not personally agree to the purchase and sale agreement—only his company did. (*Id.*)

## B.    Lukasak's Employment, Bonus, and Class C Unit Agreements

After the buyout, Lukasak agreed to continue to work for Defendant Premier Sports Events LLC under an employment agreement. (Pl.'s First Am. Compl. ¶ 27, PageID.35)  The employment agreement provided that Defendant Premier Sports Events LLC could only terminate Lukasak's employment for cause. (*Id.* ¶ 30, PageID.36)

As part of his buyout deal, Lukasak also entered into a bonus incentive agreement. (*Id.* ¶ 31, PageID.36)  Under that agreement, Lukasak earned an annual bonus based on net profits and was also entitled to a buyout bonus if his employment were to end. (*Id.* ¶¶ 32-33, PageID.36)

Defendant Legacy Global Sports LP later entered into an agreement with Lukasak to grant him a certain number of Class C units of Legacy Global Sports LP. (*Id.* ¶ 34, PageID.36)  The agreement provided that Lukasak's units would vest on a graduated schedule over time. (*Id.* ¶ 35, PageID.36-37)  The Class C Unit agreement further provided that if Lukasak's employment terminated before the vesting date, then he would not receive any ownership units in Legacy Global Sports LP. (*Id.* ¶ 36, PageID.37)

## C.    Defendants Terminate Lukasak's Employment Without Cause and Targeted Him Because of His Gender

In December 2018, a new group of investors lead by Defendant Stephen Griffin took control of Defendant Premier Sports Events LLC as well as the majority ownership interests in Defendant Legacy Global Sports LP. (*Id.* ¶¶ 37-38, PageID.37)  Defendant Griffin and the new ownership group created significant discord with the employees of Defendant Premier Sports

- 2 -

Events LLC, and several employees filed lawsuits and charges of employment discrimination against Defendants alleging discrimination, harassment, and retaliation. (*Id.* ¶¶ 39-40, PageID.37)

Through all the chaos and turmoil that Defendant Griffin created, he learned that an employee had also raised a concern about Lukasak relating to an event that occurred in April 2018. (*Id.* ¶ 41, PageID.37-38) The employee made very clear that she considered the matter closed and resolved, and she did not want to file any sort of complaint or request an investigation of the matter. (*Id.*) But to deflect the focus away from himself and his own misdeeds, Defendant Griffin saw an opportunity for himself and Defendants and he pounced. (*Id.* ¶ 42, PageID.38) He immediately launched an investigation into the long-resolved concern raised by this employee. (*Id.*)

The employee at the center of this "complaint" repeatedly informed Defendant Griffin that she did not want any sort of investigation performed, but Defendant Griffin persisted with the investigation anyway. (*Id.* ¶ 43, PageID.38) Ultimately, at Defendant Griffin's direction, Defendant Premier Sports Events LLC terminated Lukasak's employment to try to give the appearance that he and Defendants took employee complaints seriously. (*Id.* ¶ 44, PageID.38)

This was all a ruse and done to provide the appearance of corporate compliance and to better position Defendants in litigating their disputes with other employees. (*Id.* ¶ 45, PageID.38) In other words, Defendants would not have targeted and terminated Lukasak's employment if he were female. (*Id.*) The ginned up termination of Lukasak's employment also gave Defendants an opportunity to try to hold back roughly $1M in payments they owed him and prevented his Class C units from vesting. (*Id.*)

## II. ARGUMENT

### A. The Parties to This Case Have Not Agreed to a Forum-Selection Clause That Applies to Any of Their Agreements In Dispute Here

Defendants go on at length in their motion about how Lukasak and Defendants entered into a purchase and sale agreement, and then how that agreement includes a forum selection clause that requires the resolution of all disputes between the parties in Maine. The purchase agreement, however, was made between four parties, and Jeff Lukasak was not one of them.

Maine law governs the interpretation and validity of the purchase agreement, as specified in Paragraph 21(c) of that agreement. (Purchase & Sale Agreement ¶ 21(c), PageID.118) The threshold question before the Court is whether Jeff Lukasak ever personally agreed to the purchase agreement (which he did not)—and not whether the forum-selection clause contained within the purchase agreement is enforceable.  Accordingly, cases like *Wong* and others that resolve questions involving the *enforcement* of forum selection clauses under federal law have no application here. *See*, *e.g.*, *Lanier v. Syncreon Holdings Ltd.*, No. 11-14780, 2012 WL 3475680, at *5 (E.D. Mich. Aug. 14, 2012) (surveying caselaw and holding that while "federal law applies to the enforceability of a forum selection clause, … determining the meaning and scope of a forum selection clause is a separate substantive inquiry that is controlled by the law chosen in the contract itself"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-30 (2d Cir. 2014) (using the same approach); *Albemarle v. AstraZeneca UK Ltd.*, 628 F.3d 643, 648-54 (4th Cir. 2010) (holding the same).

Instead, the critical inquiry in this case involves *contract formation* and the scope of the agreement (not *contract enforcement*).  Although, the point is more academic than of

practical import because even if federal law were to apply, the analysis under federal law turns on general principles of contract interpretation. *In re Delta Am. Re Ins. Co*., 900 F.2d 890, 892 (6th Cir. 1990).

**1. The Purchase Agreement Applies to Premier Sports Events Inc.—the Party That Made That Agreement—and It Does Not Apply To Luksasak Personally**

The parties who entered into the purchase agreement were: (1) LGS Logistics LLC, (2) Selects Sports Management Inc., (3) Premier Sports Events Inc., and (4) Premier Sports Events LLC, and no other persons or parties.  The purchase agreement made this clear:

**PURCHASE AND SALE AGREEMENT**
(Membership Interest)

Agreement made and entered into this day by and between **LGS LOGISTICS, LLC**, a Delaware limited liability company having a principal place of business at 99 Bow Street, Suite 100w, Portsmouth, NH, USA 03801 ("Buyer" and/or "Legacy") and **SELECTS SPORTS MANAGEMENT, INC.**, a New Jersey corporation d/b/a Legacy Global Sports ("Guarantor"), and **PREMIER SPORTS EVENTS, INC.**, a Minnesota[1] corporation with a principal place of business at 3030 South 9th, Kalamazoo, MI, USA 49009 hereinafter referred to as ("Seller"), for the purchase of certain Membership in **PREMIER SPORTS EVENTS, LLC.**, a Delaware limited liability company with a principal place of business in Portsmouth, NH, USA ("Company").

(Purchase & Sale Agreement, *Preamble*, PageID.108) (emphasis in original)

Those, of course, were the same parties that signed the agreement. (*Id.*, *Signature Page*, PageID.120-121)  Jeff Lukasak signed the agreement, but he did so only in his representative capacity on behalf of Premier Sports Events Inc. and Premier Sports Events LLC.[2]  Lukasak did not sign or agree to any of the terms of the purchase agreement personally or on behalf of himself.

---

1 This should have said Michigan, and the purchase agreement makes clear elsewhere. (Purchase & Sale Agreement, ¶ 8(a), PageID.111)

2 Premier Sports Events Inc. is the company that Lukasak founded, developed, and then sold to Defendants. (Pl.'s First Am. Compl. ¶¶ 23-24, PageID.35)  Defendant Premier Sports Events LLC had been created to operate the business after the sale. (*Id.* ¶ 24, PageID.35)

A contract can naturally only bind the parties that agreed to it to its terms.  Here, as it relates to the purchase agreement and its forum-selection clause, those parties were four corporate entities—none of which is Jeff Lukasak. *See*, *e.g.*, *Flaherty v. Muther*, 17 A.3d 640, 652 (Me. 2011) ("settlement agreement, by its terms, is binding only upon the individually named parties"); *Poisson v. Travelers Ins. Co.*, 31 A.2d 233, 235 (Me. 1943) ("In an ordinary contract, the parties who execute the same are usually the only ones bound by its obligations or entitled to its benefits.").

Defendants may argue that paragraph 21(a) of the purchase agreement somehow bound Lukasak personally to that agreement.  It does not.  Paragraph 21(a) merely provides "[t]his [purchase a]greement shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, legal representatives, successors, and assigns." (Purchase & Sale Agreement, PageID.117)  The phrase "legal representatives" means the parties' agents to the extent they are acting within the scope of their agency and on behalf of their principal.  It does not mean the parties' representatives in their personal capacities as "an agent is not ordinarily bound by the contract he enters on behalf of his principal … [unless he] expressly assume[s] obligations under the contract" between the principal and a third-party." *Michael v. Liberty*, 547 F. Supp. 2d 43, 49 (D. Me. 2008) (citing 12 RICHARD A. LORD, WILLISTON ON CONTRACTS § 35.34 (4th ed. 2007)); *see also Top Line Distrib. Inc. v. Spickler*, 525 A.2d 1039, 1040 (Me. 1987) (a "contract is an undertaking ... and binds only those who are parties to the … contract itself").

Jeff Lukasak did not personally assume any obligations under the purchase agreement. Accordingly, because he never personally agreed to the purchase agreement (only his company did), all of Defendants' arguments about the forum-selection clause completely fall apart.  The Court should deny Defendants' motion on that basis alone.

- 6 -

2.   **Lukasak's Employment and Bonus Incentive Agreements Were Separate Contracts and Were Not Incorporated Into the Purchase Agreement**

Even if Jeff Lukasak had agreed to the purchase agreement himself (which he did not), his employment agreement and bonus incentive agreement were never a part of the purchase agreement.  The employment agreement and bonus incentive agreement were separate, stand-alone contracts.  The purchase agreement merely referred to those agreements in paragraphs 4, 16, and 17 of the purchase agreement and memorialized Defendant Premier Sports Events LLC's agreement to separately agree to them. (Purchase & Sale Agreement ¶¶ 4, 16-17, PageID.110, 117)  The employment and bonus agreements were never expressly incorporated into the purchase agreement like Defendants claim.

Rather, a review of the purchase agreement reveals only an agreement to agree.  That is, the parties only agreed that Defendant Premier Sports Events LLC would agree to execute an employment and bonus incentive agreement with Lukasak:

> 16.   **EMPLOYMENT AGREEMENTS.**  An Employment Agreement drafted at the sole discretion of Buyer, as set forth in Exhibit D hereto, *shall be executed* between Company, Seller, and Jeff Lukasak.

> 17.   **BONUS INCENTIVE AGREEMENT.**  A Bonus Incentive Agreement drafted at the sole discretion of Buyer, as set forth in Exhibit E hereto, *shall be executed* between Company and Jeff Lukasak.

(Purchase & Sale Agreement ¶¶ 16-17, PageID.117) (emphasis added)

An agreement to agree is precisely that and nothing more.  Absent language incorporating an agreement to agree into the contract to which it refers, the referenced contracts are separate agreements. *Combined Energies v. CCI Inc.*, 514 F.3d 168, 174 (1st Cir. 2008); *White v. Fleet Bank of Maine*, 875 A.2d 680, 683 (Me. 2005); *see also Guerini Stone Co. v. P.J. Carlin Constr. Co.,* 240 U.S. 264, 277 (1916) ("a reference by the contracting parties to an extraneous writing

for a particular purpose makes it a part of their agreement *only for the purpose specified"*) (emphasis added).

Perhaps more telling, though, when the purchase agreement actually incorporated some of the exhibits attached to it into its terms, the purchase agreement specifically said so. For example, in paragraph 8(d), the parties expressly incorporated their assignment and assumption agreement into their purchase agreement: "[c]opies of the Assignment & Assumption Agreement between Seller and Company, along with the relevant Bill of Sale and general Assignment are attached as **Exhibit A**, *and incorporated herein by reference*."[3] (Purchase & Sale Agreement ¶ 8(d), PageID.111) (emphasis added)  The purchase agreement also specifically incorporated the financial statements for the purchased company (Premier Sports Events Inc.) into the purchase agreement: "[f]inancial statements relevant to this Agreement shall be attached in full as **Exhibit F**, *and are incorporated herein by reference*." (*Id.*, ¶ 8(h), PageID.112) (emphasis added)

However, conspicuously absent from paragraphs 4, 16, or 17 of the purchase agreement is any mention that the employment agreement or bonus incentive agreement were incorporated into the purchase agreement.  The reason for the absence of this "incorporation by reference" language from paragraphs 16 and 17 is because the employment and bonus incentive agreements were their own separate, stand-alone agreements and they were not a part of the purchase agreement. *See*, *e.g.*, *Northrop Grumman Info. Tech. Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008) ("incorporating contract must use language that is *express* and *clear*, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about

---

3 Only Premier Sports Events Inc. and Premier Sports Events LLC agreed to the general assignment and assumption agreement. (General Assignment and Assumption Agreement, PageID.124-139)  Jeff Lukasak did not personally agree to it.  This make sense because Jeff Lukasak did not personally agree to the purchase agreement—only his company did.

the fact that the referenced document is being incorporated into the contract") (emphasis in original); *Cofman v. Acton Corp.*, 958 F.2d 494, 497 (1st Cir. 1992) (noting that inclusion of specific language in one part of the contract infers the deliberate exclusion of that language in a separate part). The Court should reject Defendants' arguments relying on the forum-selection clause in the purchase agreement for that reason too.

### 3. The Parol Evidence Rule Bars the Introduction of Any Additional Terms To Change the Employment or Bonus Incentive Agreements

Both the employment and bonus incentive agreements contain integration clauses (sometimes called merger clauses) that confirm the agreements' written terms contained within the respective four corners of those agreements are the complete and that the written documents—and only the written documents—embody the complete agreements between the parties. The employment and bonus incentive agreements contained identical integration clauses that state: "[a]ll agreements between the parties are merged herein and *this agreement embodies all oral or other understandings between the parties*, all of which are merged herein." (Employment Agreement ¶ 10(f), PageID.149; Bonus Incentive Agreement, ¶ 8(g), PageID.156) (emphasis added)

Under Maine law, the parol evidence rule "operates to exclude from judicial consideration extrinsic evidence offered to vary, add to, or contradict the terms of an integrated written agreement."[4] c The application of the parol evidence "rule requires [the Court to make] an initial finding that the parties intended the writing to integrate their understandings concerning the subject matter of the agreement." *Handy Boat Serv. Inc. v. Prof'l Servs. Inc.*, 711 A.2d 1306, 1308-09 (Me. 1998) (citing *Farley Inv. Co. v. Webb*, 617 A.2d 1008, 1010 (Me. 1992)). "To determine

---

4 The same result would follow under Michigan law because an "integration or merger clause ... prevent[s] either party to a contract from introducing parol evidence to prove an agreement other than the one the parties actually signed." *Grand Pointe Prop. LLC v. SEC Grand Pointe LLC*, No. 301293, 2013 WL 195527, at *8 (Mich. Ct. App. Jan. 17, 2013).

whether integration was intended and whether the scope of integration was complete or partial, the court may consider extrinsic evidence." *Id.* (citing *Waxler v. Waxler*, 458 A.2d 1219, 1224 (Me. 1983)).  But such consideration "is only appropriate where the agreement is ambiguous on the issue of integration." *Id.*  Importantly, "where the language of the agreement is unambiguous with respect to the existence and scope of integration, no extrinsic evidence concerning integration may be presented by the parties or considered by the court." *Handy Boat Serv.*, 711 A.2d at 1309.

Here, the integration clause in the employment and bonus incentive agreements leaves no room for ambiguity.  The written terms of those agreements embodied "*all ... understandings between the parties*." (Employment Agreement ¶ 10(f), PageID.149; Bonus Incentive Agreement, ¶ 8(g), PageID.156) (emphasis added)  This language reflects a complete integration clause that bars the introduction of any evidence (such as an additional term like a forum-selection clause) to vary, add to, or contradict the terms of the employment and bonus incentive agreements. *See*, *e.g.*, *Bradley v. Kryvicky*, 574 F. Supp. 2d 210, 224 (D. Me. 2008) (applying parol evidence rule for integration clause that said "[t]his Agreement completely expresses the obligations of the parties"); *Choice Sec. Sys., Inc. v. AT&T Corp.*, 141 F.3d 1149 (1st Cir. 1998) (integration clause that parties' written agreement constituted their entire agreement "prevent[ed] any unincorporated side agreements previously negotiated by the parties ... from becoming enforceable provisions in their … contracts"); *see also Wendy's Int'l Inc. v. Saverin*, 337 F. App'x 471, 477 (6th Cir. 2009) (refusing to add terms to agreement that contained an integration clause because "extrinsic evidence cannot be used to prove additional promises that were not included in the express terms"); *Bowlby v. Carter Mfg. Corp.*, 138 F. Supp. 2d 182, 187-88 (D. Mass. 2001) (refusing to read purchase agreement and employment agreement together as one agreement because

- 10 -

of integration clause in employment agreement and parol evidence rule, which "indicates the parties' desire for the agreement to stand on its own").

Defendants may argue that Paragraph 9 of Lukasak's employment agreement somehow imports additional terms from the purchase agreement.  It does not.  That paragraph provides:

> **<u>Agreement Not Containing All Terms and Conditions of Employment.</u>**  Both parties acknowledge that this Agreement does not and is not intended to contain all of the terms, conditions, and agreements respecting Employee's employment with Employer.  The parties contemplate that the term and amount of Employee's compensation and benefits shall be determined by the parties from time to time, by other written agreements.  This Agreement is, however, intended to contain all of the conditions and agreements respecting the rights and obligations of the parties upon the outset of the employment relationship, ongoing employment as modified by written agreements, if any, and upon termination of Employee's employment with Employer.

(Employment Agreement ¶ 9, PageID.148)

What this paragraph contemplates is that other agreements may affect Lukasak's compensation (most notably, the bonus incentive agreement) and that the employment agreement does not reflect the final word on his compensation package.  Paragraph 9 makes clear, though, that the employment agreement contains "all of the conditions and agreements respecting the rights and obligations of the parties upon the outset of the employment relationship, ongoing employment as modified by written agreements, if any, and upon termination of Employee's employment with Employer."  (*Id.*)  Defendants have presented no agreements (and none exist) that would have modified Lukasak's employment agreement after he signed it.  Lukasak signed the employment agreement and purchase agreement on the same day (April 14, 2014), and the purchase agreement therefore could not have been an agreement modifying Lukasak's "ongoing employment."

Finally, to the extent Defendants argue some sort of ambiguity exists in the integration

- 11 -

clause or other language, the Court should reject that argument because Defendants drafted the employment and bonus incentive agreements in their "*sole discretion.*" (Purchase & Sale Agreement ¶¶ 16-17, PageID.117) (emphasis added)  The integration clause contains no ambiguities, but nevertheless Defendants cannot seek to profit in litigation from ambiguities that would have been of their making. *See Barrett v. McDonald Inv. Inc.*, 870 A.2d 146, 149 (Me. 2005) (Maine law has "long recognized that ambiguities in a contract are to be interpreted against the drafter").

### 4.  Defendants Interpretation of the Purchase Agreement's Forum-Selection Clause Is Unreasonable and Renders Other Provisions Extraneous

In their brief, Defendants only quote half the language of paragraph 21(c) of the purchase agreement. (Defs.' Br. at 11, PageID.86)  The language of paragraph 21(c) says that:

> Governing Law.  This Agreement and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of the State of Maine and [the] parties recognize the State Courts for York County, Maine, or the U.S. District Court for the District of Maine, as being the sole forum having jurisdiction over any disputes between the parties.

(Purchase & Sale Agreement ¶ 21(c), PageID.118)  The forum-selection clause is one sentence long.  It begins with a single subject ("This Agreement"), which is then followed by the dependent clause that Defendants rely on for their interpretation (the "parties recognize the State Courts for York County, Maine, or the U.S. District Court for the District of Maine, as being the sole forum having jurisdiction over any disputes between the parties.").  The only fair and logical reading of the forum-selection clause is that the parties to that "Agreement"—*i.e.*, the purchase agreement—agreed to resolve their disputes *involving that agreement* in Maine.  They did not agree to resolve in Maine any and all dispute they have about matters outside the purchase agreement.  And, even if they had, Jeff Lukasak (again) did not personally agree to it.

Defendants' read of the forum-selection as applying to the employment and bonus incen-

- 12 -

tive agreement would also render various provisions of the agreements meaningless.  For example, if Paragraph 21(c) of the purchase agreement applies to the employment and bonus incentive agreements, then it would make no sense for the parties to have independently chosen to include a choice-of-law provision because (if as Defendants urge) Maine law would already apply by virtue of Paragraph 21(c).  The Court should avoid an interpretation that would render these provisions extraneous. *See Canadian Nat'l Ry. Co. v. Montreal, Maine & Atl. Ry. Inc.*, 786 F. Supp. 2d 398, 415 (D. Me. 2011) ("An interpretation that would render any particular provision in the contract meaningless should be avoided."); *Scott v. Fall Line Condo. Ass'n*, 206 A.3d 307, 312 (Me. 2019) (courts must avoid contractual interpretations that render contract language superfluous or meaningless).

And if the terms of the purchase agreement were supposedly incorporated into the employment agreement like Defendants say, then Defendants would had to have engaged in mediation with Lukasak before they could terminate his employment based on what they claim was his breach of the employment agreement. (Purchase & Sale Agreement ¶ 21(l), PageID.119)  They did not attempt to mediate Lukasak's alleged breach of his employment agreement before firing him, which means that even Defendants do not truly believe that the purchase agreement applies to the employment agreement (or the bonus incentive agreement). *See*, *e.g.*, *Vigilant Ins. Co. v. Burnell*, 871 F. Supp. 51, 54 (D. Me. 1994) (citations omitted) (citing RESTATEMENT (SECOND) CONTRACTS § 202(g) and noting that the court should "consider conduct of the parties after the ... Agreement was signed in order to determine the intent of the parties" and their "performance of the agreement may serve to reveal their original understanding").  Defendants could have easily included forum-selection language in the employment or bonus incentive agreements

- 13 -

(like they did for the purchase agreement and general assignment agreement), and the fact that they chose not to demonstrates that they decided not to agree upon a particular forum for resolution of disputes under the employment and bonus incentive agreements. *Bowlby*, 138 F. Supp. 2d at 187-88.

### B. Defendants Have Given the Court No Reason to Transfer This Case To Maine Under Section 1404(a) or Otherwise

Other than a passing reference in their brief, Defendants make no serious argument regarding a discretionary transfer under Section 1404(a). 28 U.S.C. § 1404(a); (Defs.' Br. at 22, PageID.97)  "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving a court to ... put flesh on its bones" and Defendants' "failure to develop a legal argument in support of [their] position is a sufficient basis to deny [their] motion ...." *Loucks v. Fieldstone Mortg. Co.*, No. 07-492, 2007 WL 2814866, at *1 (W.D. Mich. Sept. 25, 2007) (Maloney, J.) (internal citations and quotations omitted).  The Court should therefore deem this argument waived and reject it. *See Steelcase Inc. v. Smart Techs. Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004) (citations omitted) (denying transfer and noting that "motion to transfer under § 1404(a) [requires] the moving party [to ]bear[] the burden of proving why a court should transfer the action ... [and t]his burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer").

But, more fundamentally, it does not appear that the Court could even transfer the case to Maine if it wanted to because nothing in the pleadings suggest that any of the Defendants would be subject to personal jurisdiction in Maine.  Defendant Premier Sports Events LLC is a Delaware company headquartered in New Hampshire. (Pl.'s First Am. Compl. ¶¶ 11-12, PageID.33) Defendant Legacy Global Sports LP is a Delaware partnership headquartered in New Hampshire.

(*Id.* ¶ 14, PageID.33).  Defendant Griffin is a Rhode Island resident. (*Id.* ¶ 16, PageID.33)  None of these Defendants have any connection to Maine and courts have refused to transfer cases—even when faced with a forum-selection clause—where there does not appear to be a basis for personal jurisdiction in the forum where the party is urging the transfer. *See*, *e.g.*, *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018) (refusing to enforce forum-selection clause and transfer case where "it is not obvious from the pleadings alone that a Brazilian court will be able to exercise jurisdiction over the defendant and offer a satisfactory remedy").

Ultimately, though, none of the 1404(a) factors favor a transfer to Maine.  The forum chosen by Lukasak is where he worked for Defendant Premier Sports Events LLC, the location where Defendants breached the parties agreements by terminating his employment, and engaged in tortious conduct.  "One of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum … [and] a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors." *Steelcase*, 336 F. Supp. 2d at 720. The present forum has a deep connection to the dispute.  Maine, on the other, hand has no connection to the parties or their claims (other than supplying the substantive law in some instances). This factor tips decidedly in favor of keeping the case here.

The convenience of the witnesses does not warrant transfer.  Defendant Premier Sports Events LLC has an office in Kalamazoo where the overwhelming majority of its employees worked. (Pl.'s First Am. Compl. ¶¶ 12, 21-22, PageID.33, 35)  At least some of these employees will be witnesses in this case and Lukasak does not anticipate (at this time) that this case will involve many non-employee witnesses.  In any event, none of these employees or witnesses live or

- 15 -

work in Maine.

The location and access to proofs favor the Western District of Michigan.  This is a breach of contract, tortious interference, and employment discrimination case where—to the extent the proofs are not already here—the parties can easily move documents, information, and witnesses into Michigan.  This is not a case, for example, involving an air crash site or dispute over real property, where the proofs might exist outside the forum with no real way to get them here.

None of the remaining Section 1404(a) factors have much bearing one way or the other, but Lukasak (again) notes that Defendants have made no argument whatsoever for a discretionary transfer under Section 1404(a). *Steelcase*, 336 F. Supp. 2d at 72.  The Court should deny their request to transfer this case to Maine under Section 1404(a) or for any other reason.

### C.    The Claims Under the Bonus Incentive Agreement Are Ripe for Review

While glossing over the fact that Defendants owe Lukasak at least $142,227.00 under the bonus incentive agreement that they have refused to pay him, they argue that his claim for payment of $708,328.50 is not yet ripe because the payment due date has not yet passed.

Defendants' due date to pay Lukasak the $708,328.50 they owe him will come due on September 17, 2019—before Defendants' deadline to file their reply brief. (Defs.' Br. at 28, Page ID.103)  Lukasak previously requested that Defendants advise him whether they would pay him this amount and they ignored him (just like they refused to pay him the $142,227.00 they already owe him under the bonus incentive agreement).

When "undertaking a ripeness analysis, [courts] weigh several factors" and "pay particular attention to the likelihood that the harm alleged by plaintiffs will ever come to pass." *United Steelworkers v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988).  "The burden is on the party

seeking to invoke jurisdiction to 'demonstrate a realistic danger of sustaining a direct injury.'" *Babbitt v. United Farm Workers Nat't Union*, 442 U.S. 289, 298 (1979) (citations omitted). However, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. *If the injury is certainly impending, that is enough*." *Id.* (citations omitted and emphasis added).

In this case, Defendants have signaled to Lukasak in every possible way that they will not pay him his $708,328.50 that he is entitled to under the bonus incentive agreement.  Therefore, it is not just a likelihood that the harm will come to pass.  It is all but certain to occur.  If, however, Defendants pay Lukasak his $708,328.50 on September 17, then Lukasak will withdraw his claim for this amount.  If they do not, then Lukasak will file a notice of non-payment with the Court to eliminate any ripeness concerns.  Assuming that Defendants do not pay Lukasak his $708,328.50 on September 17, the Court should reject Defendants' ripeness arguments.

### D.    Lukasak Adequately Pleaded His Tortious Interference Claims Against Defendant Griffin

Defendants claim that Lukasak's tortious interference claim against Defendant Stephen Griffin cannot proceed because Griffin was not a third-party to the contract. (Defs.' Br. at 23-25, PageID.98-100)  This argument, however, is a summary judgment argument, and not a legitimate argument under Federal Rule of Civil Procedure 12(b)(6).  As an initial matter, though, the Court must determine which state's law applies to this claim.

### 1.    Michigan law applies to Lukasak's tortious interference claim

Because this is a tort claim that occurred in Michigan, the law of the forum (Michigan) controls the analysis. "[F]ederal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citations omitted).  Therefore, Michigan law will prevail unless there is a "rational reason" to apply another jurisdiction's law.

- 17 -

*Sutherland v. Kennington Truck Serv. Ltd.*, 562 N.W. 2d 466, 472-73 (Mich. 1997). The Court must first determine whether any other jurisdiction besides Michigan has an interest in having its law applied. *Id.* at 471. If no other state has a competing interest, the presumption that Michigan law will apply has not been overcome and the law of the forum governs. *Id.*

Here, no other jurisdictions have an interest in seeing their laws applied to Lukasak's tortious interference claim. Under their choice of law analysis, Delaware, Rhode Island, and Maine all look to the place where the tortious conduct occurred or where the injury arose and would apply that state's laws. *See Crellin Tech. Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 12 (1st Cir. 1994) (Rhode Island resolves choice of law questions for tort cases on which state has the most significant interest and finds significant the place of the injury and where the conduct causing the injury occurred); *Johnston Assocs. Inc. v. Rohm & Haas Co.*, 560 F. Supp. 916, 918 (D. Del. 1983) (Delaware choice of law principles require law of the "state where the defendants' wrongful conduct primarily occurred must be applied"); *Forum Fin. Group v. Harvard Coll.*, 173 F. Supp. 2d 72, 85-86 (D. Me. 2001) (Maine choice of law principles require application of law of the place of the injury). New Hampshire employs an unusual choice of law analysis. *See Guardian Angel Credit Union v. MetaBank*, No. 08-261, 2010 WL 1794713, at *5 (D. N.H. May 5, 2010) (New Hampshire reviews certain "choice-influencing considerations" that seemingly provide no standard at all). In any event, though, Defendants' corporate residence in New Hampshire does not provide a significant interest that would require the application of New Hampshire law. *See Farrell v. Ford Motor Co.*, 501 N.W.2d 567, 572 (Mich App. 1993)) (site of corporate headquarters is a "minimal interest" and insignificant consideration for choice of law analysis); *Hall v. Gen. Motors Corp.*, 582 N.W.2d 866, 871 (Mich. App. 1998) (holding the same).

Additionally, because this claim sounds in tort and does not arise under the parties agree-

ment, the choice of law provisions in the Class C Unit agreement do not control.[5] *See Lakeland Reg'l Health Sys. v. Walgreens Health Initiatives Inc.*, 604 F. Supp. 2d 983, 986 (W.D. Mich. 2009) (Maloney, J.) (noting that parties' agreement called for Illinois law, but "apply[ing] Michigan law to the determination of whether [plaintiff] has a cognizable tort cause of action"); *see also Live Cryo LLC v. CryoUSA Import & Sales LLC*, No. 17-11888, 2017 WL 4098853, at *5 (E.D. Mich. Sept. 15, 2017) ("the court determines that the choice-of-law provisions in the … [a]greements are limited to contractual claims ... [h]owever, the law of the forum, namely Michigan law, governs plaintiff's tort and quasi-contract claims"); *Konica Minolta Bus. Solutions USA Inc. v. Lowery Corp.*, No. 15-11254, 2016 WL 6828472, at *4 (E.D. Mich. Nov. 18, 2016) (holding that choice of law provision governed contract claim, but Michigan law applied to tortious interference claim); *AGA Gas Inc. v. Wohlert Corp.*, No. 98-155, 2000 WL 1478466, at *2 (W.D. Mich. July 21, 2000) (Michigan law applied to tort claims despite choice of law provisions).

## 2. Defendant Griffin's employee status does not immunize him from liability when he used his position to further his own interests at Lukasak's expense

Under Michigan law, corporate agents can face liability for tortious interference with the corporation's contracts when they acted for their own benefit. *Stack v. Marcum*, 382 N.W.2d 743, 744 (Mich. Ct. App. 1985); *see also Moellers N. Am., Inc. v. MSK Covertech Inc.*, 912 F. Supp. 269, 271 n.3 (W.D. Mich. 1995) (the "shield from [tortious interference] liability also does not apply where the corporate employee is acting for his own benefit against the benefit of his corporate employer").

A court in the Eastern District of Michigan put it this way when rejecting the argument that the defendant must be a stranger or third-party to the contract that he interfered with:

---

5 Further, given that the choice of law provisions in the Class C Unit agreement have not been presented to the Court in the pleadings, the Court cannot consider them on a Rule 12(b)(6) motion.

Defendant [argues that] ... he is the employee and agent of one of the contracting parties.  He therefore asserts that whether or not he was justified in terminating the contracts is not a question for the jury to decide and, relying on *Greyhound Corp v Commercial Casualty Co*, 259 AD 317; 19 NYS2d 239 (App. Div., 1940), asserts that as a corporate employee and officer who acted on his employer's behalf he is immune from a tortious interference with contract suit unless he committed a separate tort apart from the alleged interference.  The court disagrees. The trier of fact must decide whether the defendant acted on his employer's behalf or for his own benefit when he terminated the contract and lease agreements the plaintiffs had with Interstate.  *The fact that Fonzi was employed by Interstate to exercise the authority he used to terminate these contracts does not immunize his conduct if he used his authority to further his own ends at the plaintiffs' expense.* The inference of regularity which might attach to his actions has been challenged by the plaintiffs, and the court cannot determine on the record before it that this challenge is frivolous or without merit.

*Seven D. Enter. Ltd. v. Fonzi*, 438 F. Supp. 161, 163-164 (E.D. Mich. 1977) (emphasis added).

In this case, the question about why Defendant Griffin terminated Lukasak's employment so that his Class C Units would not vest is a question of fact inappropriate to resolve on a 12(b)(6) motion.  Lukasak contends that Defendant Griffin prevented his Class C Units from vesting for his own personal gain so that his own Class C Units in the company would grow and he would have a larger share.  Defendant Griffin's employee status and why he interfered with Lukasak's Class C Unit agreement is not an allegation that Lukasak has to plead or prove. MICH. MODEL CIV. JI 125.01.  Rather, this represents an affirmative defense that Defendants have the burden of proving.

More fundamentally, though, the question about why a defendant terminated an employee's employment (tortious or not) is a question of fact. *See*, *e.g.*, *Segue v. Wayne County*, No. 310282, 2014 WL 2154976, at *5 (Mich. Ct. App. May 22, 2014) (reversing trial court's grant of motion to dismiss on tortious interference claim over termination of employment contract where "employee's exercise of authority within the scope of his employment … does not immunize his conduct if he used his authority to further his own ends at the plaintiff's expense).  The Court should

- 20 -

therefore deny Defendants' motion to dismiss based on their argument that Defendant Griffin was not a third-party to the contract he interfered with.

### E.    Lukasak Adequately Pleaded His Gender Discrimination Claim

Relying on the Michigan Supreme Court's decision in *Town v. Michigan Bell Telephone*, 568 N.W.2d 64 (Mich. 1997), Defendants argue that Lukasak's gender discrimination claim under the ELCRA is deficient because they believe he must prove that his gender was a "determining factor," which they take to mean that his gender must be the only factor. (Def.'s Br. at 25-26, PageID.101)  Defendants are mistaken.

In *Town*, the court held that to prevail on a claim under ELCRA "the employee must submit admissible evidence to prove that … the plaintiff's age [or other protected status] *was a motivating factor in the employer's decision*." *Town*, 455 Mich. at 697 (emphasis added).  The *Town* court used the term "motivating factor" and "determining factor" interchangeably, and the court never held that the unlawful bases for making an employment decision under the ELCRA must be the only reason in order to prevail.

Rather, a claim is sufficient under the ELCRA if the unlawful reason was one of the reasons or made a difference in determining whether to take the adverse employment action. *Town*, 455 Mich. at 701-07; *see also Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 522 (Mich. 2001) (ELCRA plaintiff need only prove that the protected characteristic "was a motivating factor for the adverse action taken by the employer toward the plaintiff"); *Lytle v. Malady*, 579 N.W.2d 906, 916 (Mich. 1998) (using determining factor and motivating factor interchangeably and holding that "a plaintiff must prove discrimination ... was a motivating factor for the adverse action taken by the employer toward the plaintiff"); *see also* MICH. MODEL CIV. JI 105.04(b) ("Plaintiff has the burden of proving that ... [gender] was one of the motives or reasons which made a difference in

- 21 -

determining to [discharge] the plaintiff").

The Sixth Circuit Court of Appeals has not endorsed Defendants' view either. *See*, *e.g.*, *Lewis v. City of Detroit*, 702 F. App'x 274, 278 (6th Cir. 2017) (noting that an ELCRA plaintiff can prove discrimination if his protected status was either a "motivating" or "determining factor" in the employer's decision); *Ondricko v. MGM Grand Detroit LLC*, 689 F.3d 642, 652-53 (6th Cir. 2012) (reversing summary judgment to employer and noting that "[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases" and both Title VII and ELCRA only require that a plaintiff prove that "gender was a motivating factor" in the termination decision).

The Federal Rules of Civil Procedure require notice pleading. FED. R. CIV. P. 8(a).  Defendants, however, demand in their motion that Lukasak must prove his gender discrimination claim in the allegations in his complaint.  They argue he must allege a *prima facie* case of discrimination or else his complaint is deficient. (Defs.' Br. at 25-26, PageID.100-103)  The United States Supreme Court, however, has flatly rejected that argument. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("we hold that an employment discrimination plaintiff need not plead a *prima facie* case of discrimination"); *see also Roof v. Bel Brands USA Inc.*, 641 F. App'x 492, 497 (6th Cir. 2016) ("As we recently explained, a plaintiff is not required to plead all elements of a *prima facie* case of discrimination in order to survive a motion to dismiss").

The cases on which Defendants rely for their argument about what allegations a complaint must contain arose under an entirely different standard.  The court in *Miller v. CVS Pharmacy Inc.*, 779 F. Supp. 2d 683 (E.D. Mich. 2011) evaluated a motion for summary judgment—not a motion to dismiss.  The challenge there, of course, was to the plaintiff's proofs and not his pleadings.  The other case Defendants cite involved a motion for judgment notwithstanding the

verdict, which evaluates the proofs and does not evaluate the pleadings. *Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 265 (6th Cir. 1986).  The final case Defendants cite dealt with a magistrate's report on a *pro se* plaintiff's complaint that did not involve the ELCRA. *Gann v. Kolfage*, No. 14-1609, 2016 WL 6127722 (M.D. Tenn. Sept. 30, 2016).  None of these cases lend any support to Defendants' argument about Lukasak's gender discrimination claims and what his complaint must include.

To the extent Defendants are truly confused about their discriminatory conduct and why it violates the ELCRA, Lukasak will (again) outline it for them as he did in his complaint:

- Several employees lodged complaints and charges of employment discrimination, harassment, and retaliation against Defendant Stephen Griffin. (Pl.'s First Am. Compl. ¶¶ 3, 40, PageID.31, 37)

- The employees of Premier Sports Events and Legacy Global Sports knew about these complaints and charges and Defendants wanted to take the focus away from  Defendant Griffin so that they could try to show (or give the appearance) that they took employee complaints seriously. (*Id.* ¶¶ 3, 5, 40, PageID.32, 37)

- Defendants needed a male employee to make an example of to show the rest of the workforce that they were willing to make changes and were tolerant, forward thinking employers when it came to allegations of harassment and discrimination. (*Id.* ¶¶ 3, 5, 44-45, PageID.31, 38)

- That opportunity arose when Defendant Griffin learned of a concern a female employee had raised involving Lukasak which had long been resolved and the employee considered the matter closed.  The employee made clear she did not want any sort of investigation performed. (*Id.* ¶¶ 6, 41, 43, PageID.32, 37-38)

- Defendants seized this opportunity to perform a sham investigation and singled Lukasak out for discipline so that they could eventually terminate his employment. (*Id.* ¶¶ 7, 42, PageID.32, 38)

- Defendants targeted Lukasak and fired him because of his gender.  In other words, all things being equal, Defendants would not have fired Lukasak had he been a female. (*Id*. ¶¶ 9, 45, PageID.33, 38)

Targeting an employee for an investigation and terminating his employment because of

his gender is discriminatory and violates the ELCRA. *Wright v. AutoZone Stores Inc*., 951 F. Supp. 2d 973, 995 (W.D. Mich. 2013).  Lukasak has more than adequately pleaded his gender discrimination claim and the Court should deny Defendants' motion on that basis.  To the extent that Defendants dispute these allegations, the time to challenge them is at summary judgment—not in a motion to dismiss.  Lukasak has considerable evidence supporting his allegations, in particular multiple letters and emails from the female employee where she pleaded with Defendants to end their sham investigation.  Lukasak will present this evidence at summary judgment and trial in accordance with the Federal Rules of Civil Procedure.

### F.    The Court Should Disregard the Materials Outside the Pleadings that Defendants Offered in Support of Their Motion To Dismiss

When considering a motion under Rule 12(b)(6), the Court cannot consider any matters outside the pleadings and Defendants have made many unsupported assertions that have no home in the pleadings.  The Court should therefore reject the statements outside the pleadings on pages 26 through 28 of Defendants' brief. (Defs.' Br. at 26-28, PageID.100-103)  Lukasak does not intend to respond in-kind to the invectives hurled about in Defendants' brief, but suffice it to say that he wholeheartedly disputes them and they are wildly misleading.  Lukasak (again) will provide evidence supporting his claims at summary judgment and trial.

If, however, the Court does plan to consider matters outside the pleadings, then it should at least have the benefit of the unredacted charge of employment discrimination filed against Defendant Legacy Global Sports. (Ex. 1, Unredacted Charge of Discrimination)  As the unredacted charge allegations show, the charge primarily involved the discriminatory and retaliatory conduct of Defendant Griffin—not Lukasak. (*Id.* ¶¶ 13-22)

- 24 -

### III. CONCLUSION

The Court should deny Defendants' motion to dismiss in its entirety because Plaintiff Jeff Lukasak never personally agreed to the purchase agreement that contains the forum-selection clause Defendants rely on.  The Court should also deny Defendants' motion because Lukasak's claim for his bonus will come due on September 17 and this claim is ripe for review.  Finally, the Court should deny Defendants' motion because Lukasak has adequately pleaded his claims for tortious interference and ELCRA discrimination.  If, however, the Court intends to grant Defendants' motion in any way or perceives the need for him to clarify his allegations, then—and out of an abundance of caution only—Lukasak requests leave to amend his complaint as permitted by Federal Rule of Civil Procedure 15(a)(2).

JEFF LUKASAK

Dated:  September 6, 2019

By:     /s/  Mark S. Wilkinson
Mark S. Wilkinson (P68765)
*Attorney for Plaintiff*
PALADIN EMPLOYMENT LAW PLLC
251 North Rose Street
Suite 200, PMB № 288
Kalamazoo, MI 49007-3860
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

- 25 -

### CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on September 6, 2019, I electronically filed *Plaintiff's response to Defendants' motion to dismiss* with the Clerk of the Court using the Court's Case Management/Electronic Case Files (ECF) system, which will send notification of this filing to those registered persons of the Court's ECF system participating in these proceedings by electronic notice.

I further certify that there are 7,893 words in this brief, including headings, footnotes, citations, and quotations, as calculated by LibreOffice open source word processing software.


        /s/  Mark S. Wilkinson
          Mark S. Wilkinson