UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF LUKASAK,

    Plaintiff,

v.

PREMIER SPORTS EVENTS, LLC,
LEGACY GLOBAL SPORTS LP, and
STEPHEN GRIFFIN,

    Defendants.

Case No. 1:19-CV-00450-PLM-RSK
Hon. Paul L. Maloney

_____

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF No. 3]**

Pursuant to Rule 7.2(c) of the Local Civil Rules for the Western District of Michigan ("LCivR"), Defendants Premier Sports Events, LLC, Legacy Global Sports LP, and Stephen Griffin respectfully submit this Reply in support of their Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 9] ("Motion") and in response to Plaintiff's Response to Defendants' Motion to Dismiss [ECF No. 10] ("Response").

1

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 5

ARGUMENT ............................................................................................................................ 5

I.   LUKASAK IS BOUND BY THE FORUM SELECTION CLAUSE, AND THIS
     CASE MUST BE ADJUDICATED IN MAINE .................................................................. 5

     A.   The Agreements Must Be Read as One Document ................................................ 5

     B.   Courts Routinely Enforce Forum Selection Clauses Against Non-Party
          Signatories................................................................................................................ 6

     C.   Lukasak Cannot Reap Contractual Benefits While Avoiding Contractual
          Burdens .................................................................................................................. 10

     D.   Alternatively, the Existence of a Valid Forum Selection Clause Changes the
          Section 1404(a) Transfer Analysis, and This Case Should Be Transferred ......... 10

     E.   Personal Jurisdiction Is Not a Bar to Maine Venue.............................................. 11

II.  LUKASAK HAS NOT PLAUSIBLY ALLEGED THAT GRIFFIN ACTED
     OUTSIDE THE SCOPE OF HIS EMPLOYMENT AND AGAINST HIS
     EMPLOYER'S INTEREST IN DECIDING TO TERMINATE LUKASAK ................. 12

III. LUKASAK HAS NOT PLAUSIBLY ALLEGED HOW BEING MALE WAS A
     DETERMINING OR A MOTIVATING FACTOR IN HIS TERMINATION................ 13

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 6, 14

*Aspitz v. Witness Sys., Inc.*,
   No. C 07-02068 RS, 2007 WL 2318004 (N.D.Cal. Aug. 10, 2007) .......................... 8

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex.*,
   571 U.S. 49 (2013) ...................................................................................................... 11

*Baker v. LeBoeuf, Lamb, Leiby & Macrae*,
   105 F.3d 1102 (6th Cir. 1997) ..................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 6, 14

*Caperton v. A.T. Massey Coal Co., Inc.*,
   690 S.E.2d 322 (W.Va. 2009) ..................................................................................... 9

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991) .................................................................................................... 13

*Clinton v. Janger*,
   583 F.Supp. 284 (N.D.Ill. 1984) ................................................................................. 8

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
   709 F.2d 190 (3rd Cir. 1983) ....................................................................................... 10

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ..................................................................................... 8

*Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*,
   5:01-CV-0882 NAM GJD, 2007 WL 2891981 (N.D.N.Y. Sept. 28, 2007) ......... 8, 10

*Grott v. Jim Barna Log Sys.-Midwest, Inc.*,
   794 N.E.2d 1098 (Ind. Ct. App. 2003) ....................................................................... 9

*Hall v. Internet Capital Group, Inc.*,
   338 F.Supp.2d 145 (D.Me. 2004) ................................................................................ 9

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
   464 F.3d 514 (5th Cir. 2006) ....................................................................................... 11

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206 (7th Cir. 1993) ................................................................................ 6, 8, 9

*Lu v. Dryclean-U.S.A. of Calif., Inc.*,
   11 Cal.App.4th 1490 (1992) .................................................................................................. 9

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
   714 F.3d 714 (2d Cir. 2013) .................................................................................................. 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ................................................................................................. 8

*Marano Enters. of Kansas v. Z-Teca Rests. L.P.*,
   254 F.3d 753 (8th Cir. 2001) ............................................................................................ 8, 10

*Medtronic, Inc. v. Endologix, Inc.*,
   530 F.Supp.2d 1054 (D.Minn. 2008) .................................................................................... 8

*Moellers N. Am., Inc. v. MSK Covertech Inc.*,
   912 F.Supp. 269 (W.D. Mich. 1995) ............................................................................... 6, 13

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................................................ 12

*Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*,
   489 F.3d 303 (6th Cir. 2007) ............................................................................................... 13

*Roof v. Bel Brands USA, Inc.*,
   641 Fed. Appx. 492 (6th Cir. 2016) .................................................................................... 14

*Rosenthal v. Means*,
   388 A.2d 113 (Me. 1978) ................................................................................................. 7, 9

*Seven D. Enters. Ltd. v. Fonzi*,
   438 F.Supp. 161 (E.D. Mich. 1977) .................................................................................... 14

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ................................................................................................................ 8

*West Congress Street Partners, LLC v. Rivertown Dev., LLC*,
   739 Fed. Appx. 778 (6th Cir. 2018) .................................................................................... 15

*Wong v. PartyGaming Ltd.*,
   589 F.3d 821 (6th Cir. 2009) ................................................................................................ 8

**STATUTES**

28 U.S.C. § 1404(a) .................................................................................................................... 8

**RULES**

LCivR 7.2(c) ............................................................................................................................... 1

## INTRODUCTION

*First*, Lukasak's claims should be dismissed based on the forum selection clause contained in the Purchase and Sale Agreement ("P&S Agreement") underlying the parties' relationship. It is well-established that non-signatories may be bound by a forum selection clause where the parties and alleged conduct are closely related to the contract containing the forum selection clause. *See e.g.*, *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993).

*Second*, Lukasak's tortious interference claim must be dismissed because Griffin is not a stranger to the contract at issue, and plaintiff has not alleged that Griffin was acting in his own self-interest against the interest of his employer. *See Moellers N. Am., Inc. v. MSK Covertech Inc.*, 912 F.Supp. 269, 271 n.3 (W.D. Mich. 1995).

*Third*, Lukasak's discrimination claim must be dismissed because it does not meet the plausibility standard outlined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The First Amended Complaint does not include allegations from which a reasonable inference of gender discrimination can be drawn.

## ARGUMENT

**I.     LUKASAK IS BOUND BY THE FORUM SELECTION CLAUSE, AND THIS CASE MUST BE ADJUDICATED IN MAINE.**

### A.     The Agreements Must Be Read as One Document.

Tellingly, Lukasak does not offer any case law to refute the ample precedent offered by Defendants in support of applying the P&S Agreement's forum selection clause to all of the claims in the First Amended Complaint. In his Response, Lukasak concedes, as he must, the interrelatedness of the four contracts at issue. Lukasak states that the Bonus Incentive Agreement was "part of his buyout deal." *See* ECF No. 10 at PageID.174. Plaintiff also admits that execution of his Employment Agreement was a term of the P&S Agreement (*id.* at PageID.179), and that

5

certain terms of the Class C Agreement were conditioned upon his employment status (*id.* at PageID.174). Lukasak's argument that he did not sign the P&S Agreement in his individual capacity is unavailing and does not affect the Court's obligation to examine all of the transaction documents together insofar as Maine's Supreme Judicial Court has held that "all writings that form part of, or pertain to, the same transaction should be read together ***even though the writings are not all between the same parties***." *Rosenthal v. Means*, 388 A.2d 113, 115 (Me. 1978) (*citing* 3 A. Corbin, Contracts s 549 (1960)) (emphasis added). Thus, nothing in Lukasak's Response disturbs the conclusion that the Maine forum selection clause contained in the P&S Agreement applies to all three agreements and, therefore, to all of Lukasak's claims.

In addition, Lukasak's reference to the mediation provision in the P&S Agreement is beside the point. The plain language in that clause makes it a permissive, not mandatory provision by which the parties agreed to mediate certain disputes, upon request and notice by one of the parties. Nothing in the P&S Agreement or any other agreement made mediation a prerequisite to Premier's ability to terminate Lukasak's employment for cause. And, the mediation provision itself provides that "either party may pursue all remedies available at law or in equity." ECF No. 9-1 at PageID.119.

### B. Courts Routinely Enforce Forum Selection Clauses Against Non-Party Signatories.

Plaintiff's Response inexplicably ignores the substantial body of federal case law extending the application of forum selection clauses to related non-parties, such as non-party signatories who execute an agreement as a principal or officer of a contracting party. Based on those cases and the reasons set forth below, Lukasak is bound by the Maine forum selection clause contained in the P&S Agreement, and this case should be dismissed pursuant to the doctrine of *forum non conveniens*.

As a threshold matter, "[i]n [a] diversity suit, the enforceability of the forum selection clause is governed by federal law."[1] *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009); *see Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) ("We apply federal law to the interpretation of the forum selection clause.") Federal courts have unequivocally held that "where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (*quoting Holland Am. Line Inc. v. Wärtsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)); *see Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997); *Marano Enters. of Kansas v. Z-Teca Rests. L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988); *Medtronic, Inc. v. Endologix, Inc.*, 530 F.Supp.2d 1054, 1056-57 (D.Minn. 2008); *Aspitz v. Witness Sys., Inc.*, No. C 07-02068 RS, 2007 WL 2318004, at *3 (N.D.Cal. Aug. 10, 2007); *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, 5:01-CV-0882 NAM GJD, 2007 WL 2891981, at *8 (N.D.N.Y. Sept. 28, 2007); *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill. 1984). In order to bind a non-party to a forum selection clause, the party must be closely related to the subject matter of the contract and dispute such that it becomes foreseeable that it will be bound.[2] *Hugel*, 999 F.2d at 209; *Baker*, 105 F.3d at 1106 (citing the standard set forth in *Hugel* with approval).

---

[1] Further, because Defendants have moved in the alternative to transfer this case to the U.S. District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a), federal law governs this Court's decision whether to give effect to the forum selection clause and to exercise its discretion to transfer. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988).

[2] Lukasak contends that federal law applies to the enforceability of the forum selection clause, while Maine law applies to determine the meaning and scope of the clause. *See* ECF No. 10 at

7

Lukasak admits in his Response that he was closely related to the P&S Agreement and even signed the P&S Agreement twice – once as the principal of Premier Sports Events, Inc. and again on behalf of Premier Sports Events, LLC. *See* ECF No. 9-1 at PageID.120; ECF No. 10 at PageID.177. Elsewhere in the P&S Agreement, Lukasak is specifically named and is listed as the sole owner of Premier Sports Events, Inc., which is listed as the sole member of Premier Sports Events, LLC. *See* ECF No. 9-1 at PageID.109, 110, 117-18, 140. In essence, Lukasak in some capacity constituted the entirety of the seller's side of the P&S Agreement, and the allegations in the First Amended Complaint set out his central involvement in the contracting process. *See* ECF No. 3 at PageID.35 ("By 2014, private equity groups and investors began to take notice of the business **Lukasak** had built and **Lukasak** ultimately structured a buyout deal…") (emphasis added). No individual was closer to the buyout than Lukasak, and his prominent involvement in the contractual relationship and the disputes arising out of it dictates that the Maine forum selection clause must be enforced against him. *See Hugel*, 999 F.2d at 209-10 (citing ownership of corporate

---

PageID.176. Lukasak does not identify, however, any dispute about the meaning (Lukasak admits it is a mandatory clause, *id*. at PageID.184) or scope of the forum selection clause (Lukasak admits that it covers all disputes between the contracting parties, *id.*). To the extent the issue of whether the forum selection clause may be enforced against Lukasak can be construed as an issue of scope (and defendants maintain that it is a question of enforcement, not scope), Maine's Supreme Judicial Court has held that "all writings that form part of, or pertain to, the same transaction should be read together even though the writings are not all between the same parties." *Rosenthal*, 388 A.2d at 115 (*citing* 3 A. Corbin, Contracts s 549 (1960)). As set forth in Defendants' Motion (ECF No. 9 at PageID.91-92), the contracts at issue were all part of the same transaction and, pursuant to *Rosenthal*, must be construed together. Thus, while Maine's highest court has not expressly adopted the majority view that forum selection clauses bind non-parties related to the agreement, *see e.g., Caperton v. A.T. Massey Coal Co., Inc.*, 690 S.E.2d 322, 347 (W.Va. 2009); *Grott v. Jim Barna Log Sys.-Midwest, Inc.*, 794 N.E.2d 1098, 1104-05 (Ind. Ct. App. 2003); *Lu v. Dryclean-U.S.A. of Calif., Inc.*, 11 Cal.App.4th 1490, 1493-94 (1992), it has not rejected it, and courts in Maine have joined those other courts that have applied arbitration clauses to non-signatory employees and the like. *E.g.*, *Hall v. Internet Capital Group, Inc*., 338 F.Supp.2d 145, 151 (D.Me. 2004) ("other courts have found arbitration clauses substantially similar to the arbitration clause contained in the Purchase Agreement to be sufficiently broad to bind nonsignatories").

entities and officer/director status as determining factors on issue of whether individual and entities were closely related); *Marano Enters.*, 254 F.3d at 757 (holding that shareholder, officer, and director of corporate signatory to contract containing forum selection clause was "without question" closely related to the contract and properly bound by the forum selection provisions contained therein).

As a result of his central role in the buyout transaction, it was foreseeable that Lukasak would be bound to the mandatory forum clause requiring the parties to litigate their disputes in Maine. To hold otherwise would force a split of claims in multiple jurisdictions. At Paragraphs 16 and 17 of the P&S Agreement, Lukasak's Employment Agreement and Bonus Incentive Agreement are referenced and incorporated into the P&S Agreement as exhibits.[3] *See* ECF No. 9-1 at PageID.117. Lukasak derived substantial benefits from the P&S Agreement and, by his own admission in the First Amended Complaint, he negotiated the buyout deal that contained the Maine forum selection clause. *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202-03 (3rd Cir. 1983) (recognizing that it was "perfectly foreseeable" that a third-party beneficiary to a contract would be bound by the contract's forum selection clause). Thus, Lukasak could not only foresee being bound by the clause – he negotiated and twice signed the P&S Agreement that contained it and gave him substantial personal benefits. *See Great N. Ins. Co.*, 2007 WL 2891981, at *8 (holding that forum selection clause signed by a parent company may be enforced against the plaintiff-subsidiary because such enforcement is "clearly foreseeable" given the relationships between the parties and the basis upon which the plaintiff-subsidiary filed suit).

---

[3] The Employment Agreement and Bonus Incentive Agreement are governed by Maine law. *See* ECF No. 9-1 at PageID.149 and 156.

Not surprisingly, none of the cases Lukasak cites in his response even address forum selection clauses, and Lukasak's rote recitation of Maine contract and agency law misses the point. Federal courts have recognized the practical importance of enforcing forum selection clauses against non-signatories who are closely involved in the contractual relationship. For the reasons set forth above, the mandatory Maine forum selection clause contained in the P&S Agreement must be enforced against Lukasak.

### C. Lukasak Cannot Reap Contractual Benefits While Avoiding Contractual Burdens.

Lukasak is also bound by the forum selection clause by virtue of direct benefits estoppel. Direct benefits estoppel prevents a non-contracting party from accepting the benefits of a contract but then, during litigation, repudiating clauses they find inconvenient or unfavorable to their position. *See Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006). Direct benefits estoppel has been used to bind non-parties to forum selection clauses. *See id.* at 518 (citing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999), and affirming dismissal based on enforcement of forum selection clause against non-party on direct benefits estoppel theory). Lukasak concedes in his papers that he received substantial benefits from the buyout deal, and the receipt of those benefits estop him from escaping the consequences of the forum selection clause. *See e.g.*, ECF No. 10 at PageID.174 (Lukasak conceding that the Bonus Incentive Agreement was "part of his buyout deal").

### D. Alternatively, the Existence of a Valid Forum Selection Clause Changes the Section 1404(a) Transfer Analysis, and This Case Should Be Transferred.

Defendants have requested transfer to the U.S. District Court for the District of Maine as an alternative to wholesale dismissal of Lukasak's First Amended Complaint. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 60 (2013) ("*Atlantic Marine*")

("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.") (quotations and citations omitted). According to the Supreme Court in *Atlantic Marine*, in the context of a Section 1404(a) analysis, "***a forum-selection clause [must] be given controlling weight in all but the most exceptional cases***." *Id.* at 59-60 (emphasis added; quotations and citations omitted). Indeed, where a forum selection clause exists, a district court may consider arguments about public-interest factors only. *Id.* at 64. The public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (quotations and citations omitted).

Here, Lukasak offers little, if anything, to overcome the "controlling weight" given to the parties' forum selection clause. In fact, the most compelling public interest factor in this case is familiarity with the law to be applied, which in this case, according to the parties' contracts, is primarily Maine law. Lukasak concedes this at page 15 of his Response. Accordingly, if it is not dismissed, this case should be transferred pursuant to Section 1404(a).

      E.     **<u>Personal Jurisdiction Is Not a Bar to Maine Venue.</u>**

On pages 14 and 15 of his Response, Lukasak disingenuously claims that defendants could raise personal jurisdiction defenses if the case is transferred to the U.S. District Court for the District of Maine. That claim ignores that Defendants have taken a position before this Court that Lukasak's claims must be adjudicated by "the State Courts for York County, Maine, or the U.S.

11

District Court for the District of Maine" pursuant to a valid, mandatory forum selection clause contained in the P&S Agreement. ECF No. 9-1 at PageID.118. Accordingly, Defendants have consented to personal jurisdiction in those courts as to the claims Lukasak has set forth in his First Amended Complaint. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) (forum selection clause dispositive of personal jurisdiction challenge); *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 306 (6th Cir. 2007) (forum selection clause can be basis for personal jurisdiction over defendant).

## II. LUKASAK HAS NOT PLAUSIBLY ALLEGED THAT GRIFFIN ACTED OUTSIDE THE SCOPE OF HIS EMPLOYMENT AND AGAINST HIS EMPLOYER'S INTEREST IN DECIDING TO TERMINATE LUKASAK.

With regard to his tortious interference claim, plaintiff sets forth a lengthy choice-of-law analysis that ultimately bears no fruit. Lukasak is unable to set forth any authority challenging the black letter law cited in Defendants' Motion stating that one must be a stranger to a contract in order to interfere with it. The exception on which Lukasak focuses – *i.e.*, that Griffin may be liable for interference if he was acting in his own self-interest – simply does not apply here, at least in part because plaintiff did not allege it. Lukasak's Response implicitly recognizes this by offering new allegations ***not found anywhere in the First Amended Complaint***. *See* ECF No. 10 at PageID.192 ("Lukasak contends that Defendant Griffin prevented his Class C Units from vesting for his own personal gain so that his own Class C Units in the company would grow and he would have a larger share."). Lukasak may not use his Response as a makeshift Second Amended Complaint. Furthermore, the Michigan law cited by Lukasak requires that "the corporate employee is acting for his own benefit ***against the benefit of his corporate employer***." *Moellers N. Am., Inc. v. MSK Covertech Inc.*, 912 F. Supp. 269, 271 n.3 (W.D. Mich. 1995) (emphasis added). The First Amended Complaint fails to allege, and could not do so in good faith, that Griffin was acting

against the benefit of his employer. Indeed, the First Amended Complaint seeks to hold the employer vicariously liable for the same allegations brought against Griffin.

Still further, Lukasak's assertion that he is not required to plead the exception is contradicted by the very case cited in plaintiff's Response: "The inference of regularity which might attach to [the defendant's] actions *has been challenged by the plaintiffs*, and the court cannot determine on the record before it that this challenge is frivolous or without merit." *Seven D. Enters. Ltd. v. Fonzi*, 438 F.Supp. 161, 164 (E.D. Mich. 1977) (emphasis added). Here, Lukasak has not challenged the "inference of regularity" that would certainly attach to a CEO making personnel decisions, and accordingly Lukasak's tortious interference count fails to state a claim.

### III. LUKASAK HAS NOT PLAUSIBLY ALLEGED HOW BEING MALE WAS A DETERMINING OR A MOTIVATING FACTOR IN HIS TERMINATION.

The Sixth Circuit requires plaintiffs in discrimination cases to satisfy the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Roof v. Bel Brands USA, Inc.*, 641 Fed. Appx. 492, 497 (6th Cir. 2016). Lukasak does not, and presumably cannot, articulate a plausible basis for his claim that his sex was a motivating or determining factor in his termination. The First Amended Complaint alleges that Lukasak was terminated "to try to give the appearance that [Griffin] and Defendant Premier Sports Events LLC, LGS Logistics LLC, and Legacy Global Sports LLC took employee complaints seriously and that they were tolerant, forward thinking employers as it relates to allegations of harassment and discrimination." ECF No. 3 at PageID.38. The First Amended Complaint does not allege why Lukasak's *sex* was a key factor in his termination. To the contrary, the First Amended Complaint seems to imply that defendants were simply trying to make an example out of someone and would have been happy to terminate *any* alleged harasser, regardless of gender. Defendants deny Lukasak's allegations, but even if they were true, they do not add up

13

to a plausible claim under the ELCRA, and Lukasak's discrimination claim must be dismissed. *See e.g., West Congress Street Partners, LLC v. Rivertown Dev., LLC*, 739 Fed. Appx. 778, 784 (6th Cir. 2018) (affirming dismissal of ELCRA claim where the plaintiff alleged "no facts that give rise to an inference of discrimination" insofar as the plaintiff claimed in conclusory fashion that the defendant ended a lease on account of the owner's race). To hold otherwise based on Lukasak's speculation would expose companies to liability for discrimination under federal civil rights laws whenever they properly investigate or take remedial action against someone accused of discrimination, thereby defeating the very purpose of important civil rights laws.

## CONCLUSION

WHEREFORE, Defendants respectfully request that Lukasak's First Amended Complaint be dismissed in its entirety, or, in the alternative, transferred to the United States District Court for the District of Maine; and that, in addition, Counts V and VI be dismissed with prejudice for failure to state a claim.[4]

---

[4] Lukasak has offered, at PageID.189 of its Response, to withdraw the portion of Count II that sought the recovery of a buyout bonus unless and until that claim becomes ripe for adjudication.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | HOWARD & HOWARD ATTORNEYS PLLC |
| Dated: September 20, 2019 | By: */s/ Brandon J. Wilson* |
|  | Brandon J. Wilson (P73042) |
|  | 450 West Fourth Street |
|  | Royal Oak, MI 48067 |
|  | Phone: (248) 645-1483 |
|  | E-mail: bjw@h2law.com |

-and-

POLLACK SOLOMON DUFFY LLP

Barry S. Pollack
Phillip Rakhunov
*Application for admission pro hac vice forthcoming*
101 Huntington Avenue, Suite 530
Boston MA 02199
Phone: (617) 439-9800
E-mail: bpollack@psdfirm.com
prakhunov@psdfirm.com

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I, Brandon J. Wilson, hereby certify pursuant to W.D. Mich. Local Rule 7.2(b)(ii) that there are 4,143 words, including headings, footnotes, citations, and quotations, as calculated by the Microsoft Word software.

*/s/ Brandon J. Wilson*
Brandon J. Wilson (P73042)

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2019, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings via electronic notice of this filing.

*/s/ Brandon J. Wilson*
Brandon J. Wilson (P73042)